# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

MAR 19 2018

JULIA C. DUDLEY, CLERK
BY: A. Blaylock
DEPUTY CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

INFORMATION ASSOCIATED WITH
"lmacdowell1@gmail.com" LOCATED AT GOOGLE
INC., MOUNTAIN VIEW, CA

Case No. 1:18mj40

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 842(i)(3) | possession of firearms & explosives by a prohibited person; receive explosive with |
| 18 USC 922(g)(3) | the intent that it be used to intimidate any individual or unlawfully damage or |
| 18 USC 844(d) & 21 USC 844 | destroy real or personal property; & illegally possess controlled substances |

The application is based on these facts:
See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Micah Childers, SA FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 3/19/18

_____
Judge's signature

City and state: Abingdon, VA

Pamela Meade Sargent, US Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH lmacdowell1@gmail.com THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE INC. | Case No. 1:18mj40 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, MICAH J. CHILDERS, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account stored at premises controlled by Google Inc. (hereinafter "Google"), an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government records and other information, including the contents of communications, further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I have been employed as a Special Agent with the FBI for approximately 8 years. I am currently assigned to the Richmond Division, Bristol Resident Agency (BRA), located in Bristol, Virginia. Prior to working in the BRA, I was assigned to the Atlanta Division, Rome

Resident Agency (RRA), located in Rome, Georgia, and was the coordinator for the Northwest Georgia Criminal Enterprise Task Force, an FBI Safe Street Task Force, investigating violent crimes, illegal narcotics trafficking, and illegal gang activity. I have served as the case agent on multiple terrorism investigations, to include a domestic terrorism investigation involving explosive devises. I have taken part in numerous federal, state, and local investigations concerning international and domestic terrorism, document and identity fraud, financial fraud, cybercrimes, controlled substance violations and firearms offenses.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence that violations of 18 U.S.C. § 922(g)(3) (possession of a firearm by an unlawful user of controlled substances); 18 U.S.C. § 842(i)(3) (possession of explosive materials by an unlawful user of controlled substances); 18 U.S.C. § 844(d) (transport or receive, in interstate commerce, any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property); and 21 U.S.C. § 844 (unlawful possession of controlled substances); have been committed by Louis Gardner MacDowell IV.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district

2

court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## FACTS SUPPORTING PROBABLE CAUSE

6. On January 7, 2018, a Virginia Uniform Summons was issued to Louis MacDowell by the Tazewell County Sheriff's Office (TCSO) for possession or distribution of controlled drug paraphernalia.

7. On March 4, 2018, the TCSO received a complaint from Witness#1 regarding a male subject with an altered mental state. Witness#1 had received a telephone call from Valerie MacDowell, mother of Louis MacDowell. Valerie MacDowell asked if she could borrow a gun from Witness#1 when she came from Florida to check on her son in Tazewell County, Virginia. She believed her son was in a psychotic state and was worried about his well-being.

8. The TCSO called Valerie MacDowell, who advised that Louis MacDowell was seeing people on his property who were not real. He believed that unknown people had been in his house, and he was hearing things. Valerie MacDowell stated she feared for the safety of the neighbors, and called them asking they leave their houses for their own safety.

9. The TCSO attempted to make contact with Louis MacDowell at his personal residence, located at 163 Tumbling Creek Road, Tannersville, Virginia, which is in Tazewell County. The Officers who reported to Louis MacDowell's residence observed numerous lights on and a revolver lying on the floor of the living room. Officers were unable to make contact with Louis MacDowell at that time.

10. Using statements provided by Valerie MacDowell, the TCSO obtained an Emergency Commitment Order (ECO) for Louis MacDowell from a Magistrate Judge of the Commonwealth of Virginia.

3

11. On March 5, 2018, the TCSO made telephonic contact with Louis MacDowell at his residence. After exiting the residence, Louis MacDowell was taken into custody based on the ECO. While being searched prior to transport, several narcotics and paraphernalia were located on Louis MacDowell's person.

12. Based on the evidence obtained during the search of Louis MacDowell's person, the TCSO obtained a search warrant for Louis MacDowell's residence. During execution of the search warrant at Louis MacDowell's residence, the TSCO seized a pill container with white residue believed to be cocaine, a Schedule II controlled substance, three pill containers with a cloudy white liquid, multiple syringes, miscellaneous pills, and suboxone, a Schedule III controlled substance. It is known to this agent that the paraphernalia located is consistent with the illegal use of controlled substances.

13. The TCSO also located an item that appeared to be an explosive device, commonly referred to as a "pipe bomb". Additionally, documents pertaining to the manufacturing of explosives were located on a computer printer at the residence.

14. Based on the evidence observed during the search for narcotics, the TCSO contacted Bomb Technicians with the Virginia State Police (VSP), and obtained an additional search warrant to search and seize items used in the manufacturing of explosives. VSP confirmed that the item found was an explosive device. VSP agents also discovered black powder, chemicals used to manufacture explosives, and quantities of both mixed and unmixed Tannerite. Tannerite is known to this agent as a "binary explosive". According to the Bureau of Alcohol, Tobacco, Firearms, and Explosives website, https://www.atf.gov/explosives/binary-explosives:

> Binary explosives are pre-packaged products consisting of two separate

4

components, usually an oxidizer like ammonium nitrate and a fuel such as aluminum or another metal. These components typically are not listed separately on the List of Explosive Materials and do not meet the definition of "Explosives" in 27 CFR 555.11. Therefore, ATF does not regulate the sale and distribution of these component chemicals, even when sold together in binary "kits." However, when the binary components are combined, the resulting mixture is an explosive material subject to the regulatory requirements found in 27 CFR, Part 555.

15. During the search of Louis MacDowell's residence, the TSCO seized multiple firearms, to include but not limited to the following: Remington 11-87 12 gauge, Ruger 10-22 22 long, Ruger Carbine 44 Mag, Ruger Storm Rancher 223, Colt 223 Sporting AR, Taurus Brazil 357, and Mauser Werke AG. Each of the previous are believed to be firearms as outlined in Title 18 of the United States Code, and have traveled in interstate commerce due to their manufacture in states other than the Commonwealth of Virginia.

16. During the search of the residence, the TCSO observed documentation of numerous drug tests of Louis MacDowell. The drug tests, being as recent as January 2018, showed positive results for methamphetamine, a Schedule II controlled substance.

17. While conducting the search warrant, a mail carrier delivered a package to Louis MacDowell's mailbox. Illegal narcotics and explosive materials are often ordered online and shipped to different areas of the country. The package was sent through the United States Postal Service with what is believed to be an Ebay shipping label with a return address located outside of the Commonwealth of Virginia. The package was seized and contained multiple plastic vials containing an unknown gray powder.

18. On March 14, 2018, a legal pad was observed sitting in plain view on the front porch of Louis MacDowell's residence. On the notepad was handwritten information written in first person. The writing appeared to be an explanation for why an employment drug test sample

5

was too diluted. The writing was dated June 23rd. The writer identified his/her manager's name as Brad Douglas.

19. An open source internet search returned a LinkedIn account in the name of Louis G. MacDowell IV. MacDowell's LinkIn profile stated he worked for Northrop Grumman until July 2017. From July to October 2017, employment was listed as On Administrative Hiatus, working with NGC HRBP, or Northrop Grumman Human Resources Business Partners. An open source internet search for the name Brad Douglas returned a LinkedIn account for a Brad Douglas working for Northrop Grumman.

20. Whitness#2, who lives adjacent to 163 Tumbling Creek Road, Tannersville, Virginia, informed TCSO that they often heard the sounds of explosions coming from 163 Tumbling Creek Road. On October 30, 2017, at approximately 5:23pm, Witness#2 received an email from lmacdowell1@gmail.com, an email account known to Witness#2 as being used by Louis MacDowell. The email had the subject "The Explosion!!." The email had pictures attached of an outhouse, a cylinder located beside the toilet seat in the outhouse, and the outhouse after it was blown up with explosives. Witness#2 explained that Louis MacDowell and another neighbor had an argument over the ownership and use of the outhouse.

21. A preservation request was sent to Google for lmacdowell1@gmail.com on March 16, 2018.

22. 163 Tumbling Creek Road, Tannersville, Virginia is located in Tazewell County, which is in the Western Judicial District of Virginia.

## BACKGROUND CONCERNING EMAIL

23. In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the public. Google allows

6

subscribers to obtain email accounts at the domain name gmail.com, like the email accounts listed in Attachment A. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

24. A Google subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), Google Search history, location history, content/media stored on Google Picasa Web Albums, Google Play purchase history, and other files, on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

25. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I

7

know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

26. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

27. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

28. This application seeks a warrant to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this court, regardless of

8

where Google has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.[1]

29. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed

---

[1] It is possible that Google stores some portion of the information sought outside of the United States. In Microsoft Corp. v. United States, 2016 WL 3770056 (2nd Cir. 2016), the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States. As the Second Circuit decision is not binding on this court, I respectfully request that this warrant apply to all responsive information— including data stored outside the United States—pertaining to the identified account that is in the possession, custody, or control of Google. The government also seeks the disclosure of the physical location or locations where the information is stored.

9

or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

30. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

FURTHER THE AFFIANT SAYETH NOT

Respectfully submitted,

Special Agent MICAH J. CHILDERS
Federal Bureau of Investigation

10

Subscribed and sworn to before me on _March 19_, 2018.

_Pamela Meade Sargent_
Honorable PAMELA MEADE SARGENT
United States Magistrate Judge


Seen by:

_[signature]_
Zachary T. Lee, AUSA

11

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the following email account that is stored at premises owned, maintained, controlled, or operated by Google Inc., a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043:

lmacdowell1@gmail.com

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be disclosed by Google, Inc. (the "Provider")

The types of data to be seized consist of evidence, contraband, fruits, and instrumentalities of criminal violations described in the affidavit in whatever form, namely as referenced below. To the extent that the information described in **Attachment A** related to the accounts is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government:

a. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email, and any chat communications associated with the account that may be found on the Provider's system, to include all chat communication platforms;

b. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session time and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. The types of service utilized;

d. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e. Google Search history;

f. Location history;

g. All content/media stored on Google Picasa Web Albums;

h. Google Play purchase history and transactional records, including payment method(s) and related billing information;
i. Cellular device information, including IMEI/MEID, make and model, serial number, date and IP address of last access to Google, and a list of all accounts that have ever been active on the device.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 922(g)(3) (possession of a firearm by an unlawful user of controlled substances) and 18 U.S.C. § 842(i)(3) (possession of explosive materials by an unlawful user of controlled substances); 18 U.S.C. § 844(d) (transport or receive, in interstate commerce, any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property); and 21 U.S.C. § 844 (unlawful possession of controlled substances); involving Louis Gardner MacDowell IV, including information pertaining to the following matters:

  a. Communications and recordings relating to the aforementioned offenses; and identification of the other people, accounts, users, or aliases involved in the communications;
  b. Evidence indicating how and when the email account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the email account owner;
  c. Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;
  d. The identity of the person(s) who created or used the email, including records that help reveal the whereabouts of such person(s).
  e. The identity of the person(s) who communicated with the email about matters relating to subpart (a), and records that help reveal their whereabouts.

2

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Google Inc., and my official title is _____. I am a custodian of records for Google Inc. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google Inc., and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of Google Inc.; and

c. such records were made by Google Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____       _____
Date                                                          Signature